AO 241 (Rev. 09/17)

# Petition for Relief From a Conviction or Sentence
# By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this petition.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and ____ copies to the Clerk of the United States District Court at this address:

### Clerk, United States District Court for
### Address
### City, State  Zip Code

If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9. **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Middle District of Florida |
|---|---|

| Name (under which you were convicted): <br><br> Derrick D. Robinson | Docket or Case No.: |
|---|---|

| Place of Confinement : <br> Cross City C.I., 568 NE 255th St., Cross City, FL 32628 | Prisoner No.: <br><br> H36317 |
|---|---|

| Petitioner (include the name under which you were convicted) <br><br> Derrick D. Robinson | v. | Respondent (authorized person having custody of petitioner) <br><br> Ricky Dixon, Sec'y, Fla. Dep't of Corr. |
|---|---|---|

| The Attorney General of the State of: Florida |
|---|

## PETITION

1.    (a) Name and location of court that entered the judgment of conviction you are challenging:

Circuit Court of the Tenth Judicial Circuit, in and for Polk County, Florida

    (b) Criminal docket or case number (if you know):     16-CF-8560

2.    (a) Date of the judgment of conviction (if you know):

    (b) Date of sentencing:    04/20/2018

3.    Length of sentence:    Life

4.    In this case, were you convicted on more than one count or of more than one crime?    ☑ Yes     ☐ No

5.    Identify all crimes of which you were convicted and sentenced in this case:

Count One - first-degree premeditated murder; Count Two - attempted first-degree premeditated murder

6.    (a) What was your plea? (Check one)

             ☑ (1)     Not guilty        ☐ (3)     Nolo contendere (no contest)

             ☐ (2)     Guilty           ☐ (4)     Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury     ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes     ☑ No

8.   Did you appeal from the judgment of conviction?

☑ Yes     ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:   Second District Court of Appeal

(b) Docket or case number (if you know):   2D18-2772

(c) Result:   Per curiam affirmed

(d) Date of result (if you know):   10/11/2019

(e) Citation to the case (if you know):   284 So. 3d 467

(f) Grounds raised:   Issue One - The trial court reversibly errored in overruling Appellant's objection to testimony interpreting Appellant's words.

(g) Did you seek further review by a higher state court?      ☐ Yes     ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

AO 241 (Rev. 09/17)

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.     Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?     ☑ Yes     ☐ No

11.     If your answer to Question 10 was "Yes," give the following information:

(a)     (1) Name of court:     Circuit Court of the Tenth Judicial Circuit, in and for Polk County, Florida

(2) Docket or case number (if you know):     16-CF-8560

(3) Date of filing (if you know):     03/26/2020

(4) Nature of the proceeding:     Rule 3.850 motion for postconviction relief

(5) Grounds raised:     Ground One - Trial counsel rendered ineffective assistance of counsel by

arguing against the need for a paid expert in violation of Defendant's 6th Amendment

Rights.

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result:     Summarily denied

AO 241 (Rev. 09/17)

        (8) Date of result (if you know):    04/23/2020

(b) If you filed any second petition, application, or motion, give the same information:

        (1) Name of court: _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____

        (5) Grounds raised: _____

                _____

                _____

                _____

                _____

                _____

                _____

                _____

        (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ❑ Yes    ❑ No

        (7) Result: _____

        (8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

        (1) Name of court: _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____

        (5) Grounds raised: _____

                _____

                _____

                _____

                _____

                _____

                _____

                _____

                _____

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❑ Yes     ❑ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:      ☑ Yes      ❑ No

(2) Second petition:    ❑ Yes      ❑ No

(3) Third petition:     ❑ Yes      ❑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.      For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**   Trial counsel rendered ineffective assistance of counsel by failing to investigate and present a video expert for the purpose of impeaching the State's identification witnesses.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attached.

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:   See attached.

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(c)    **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes    ☑ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☐ No

    (4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ❏   Yes      ❏   No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏  Yes      ❏   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

AO 241 (Rev. 09/17)

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ❏   Yes          ❏   No

(4) Did you appeal from the denial of your motion or petition?          ❏   Yes          ❏   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?          ❏   Yes          ❏   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❏   Yes     ❏   No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

     ❏   Yes     ❏   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?     ❏   Yes     ❏   No

(4) Did you appeal from the denial of your motion or petition?     ❏   Yes     ❏   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ❏   Yes     ❏   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?       ❏   Yes       ❏   No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)    **Post-Conviction Proceedings**:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏   Yes       ❏   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?                    ❏  Yes      ❏  No

(4) Did you appeal from the denial of your motion or petition?               ❏  Yes      ❏  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❏  Yes      ❏  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ❐ Yes    ☑ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:    Ground One. See attached.

_____

_____

_____

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Ground One. See attached.

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ❐ Yes    ☑ No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ❐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    _____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the

        judgment you are challenging:

        (a) At preliminary hearing:     Byron Hileman, Office of Regional Criminal Conflict Counsel, Drawer RC-2,

        P.O. Box 9000, Bartow, FL 33831-9000

        (b) At arraignment and plea:     Byron Hileman, Office of Regional Criminal Conflict Counsel, Drawer RC-2,

        P.O. Box 9000, Bartow, FL 33831-9000

        (c) At trial:     Joshua Westcott, 206 Easton Dr., Lakeland, FL 33803-2936

        (d) At sentencing:     Joshua Westcott, 206 Easton Dr., Lakeland, FL 33803-2936

        (e) On appeal:     David Brian Falstad, 5840 Red Bug Lake Rd. # 335, Winter Springs, FL 32708-5011

        (f) In any post-conviction proceeding:     Pro se

        (g) On appeal from any ruling against you in a post-conviction proceeding:     Andrea M. Norgard, P.O. Box 811,

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are

        challenging?          ☐  Yes     ☑  No

        (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

        (b) Give the date the other sentence was imposed:

        (c) Give the length of the other sentence:

        (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

        future?          ☐  Yes     ☑  No

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

        why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

        Petitioner's direct appeal was per curiam affirmed on October 11, 2019. 167 days passed until

        Petitioner filed his pro se Rule 3.850 motion for postconviction relief which tolled his AEDPA clock.

        His Rule 3.850 motion was denied, appealed, and the mandate issued on June 2, 2021, which

        restarted the AEDPA clock. At this point, 288-days remained.

        For purposes of AEDPA, Petitioner had 90-days to file a petition for certiorari in the United States

AO 241 (Rev. 09/17)

Supreme Court. Thereafter, the 1-year time period to file a 28 U.S.C. 2254 petition began.

The instant petition is timely if filed on or before March 19, 2022.

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:    grant an evidentiary hearing, vacate Petitioner's

judgment and sentence, remand for a new trial,

or any other relief to which petitioner may be entitled.


Robert David Malove

Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).


Executed (signed) on _____03/18/2022_____ (date).


Robert David Malove

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

Attorney for Petitioner

## GROUND ONE

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INVESTIGATE AND PRESENT THE EXPERT TESTIMONY OF A VIDEO EXPERT AS IMPEACHMENT EVIDENCE FOR THE IDENTIFICATION WITNESSES

## I. SUPPORTING FACTS

At 2:04 a.m. on October 15, 2016, a shooting occurred at the Chevron station located at 1615 Memorial Boulevard West, Lakeland, Florida. Andrea Dixon and Johnetha Ragins were shot. Dixon later passed away from her injuries. Earlier that night, a fight occurred at the Rumors Nightclub. Chris and Adrian Gatlin were involved along with Petitioner. Dixon and the Gatlins were said to have fought against Petitioner and his friends. Witnesses reported Petitioner as losing the fight and being punched by Dixon. Later, when the shooting occurred, Dixon and Ragins were standing in the area of the Gatlins.

The Chevron station had multiple surveillance cameras. At 2:04:05 a.m., the shooter is seen stepping out from behind a fence, firing his gun, and then returning behind the fence within one second. Witness accounts varied, but some witnesses identified Petitioner as the shooter. He was soon thereafter arrested and charged with murder. Petitioner was charged by indictment with Count One – first degree murder; Count Two – attempted first degree murder; and Count Three – possession of a firearm by a convicted felon.

Petitioner proceeded to jury trial. The State's evidence largely consisted of witnesses identifying Petitioner as the shooter and surveillance footage from the gas station where the shooting occurred. Kyshariah Dixon ("Kyshariah"), Andrea Dixon's daughter, witnessed the fight at Rumors Nightclub between Petitioner, Chris Gatlin, and others and saw her mother strike Petitioner. (Tr. 390-94). After the club closed, Kyshariah and her sister, Chinisha, went to meet up at "Jets," a Chevron store, with her mother and others. (Tr. 394-98). After using the bathroom, Kyshariah and Chinisha were in the midst of crossing the street when the shooting occurred. (Tr. 398-99). Kyshariah said she ran in the direction of the shooting and recognized Petitioner as the shooter by his blue and white shirt. (Tr. 404-08). Kyshariah initially thought the shots came from a car, but thereafter realized the shots came from beside a nearby fence. (Tr. 408-10, 422, 427-28). Kyshariah later identified Petitioner from a photo lineup. (Tr. 412-13).

Chinisha Jackson ("Chinisha") was crossing the street next to Kyshariah when the shooting happened. Chinisha identified herself in the surveillance video on the right as wearing light clothing. (Tr. 447). Her first instinct was to run and hide, but said she turned toward the fence and identified Petitioner through his blue and white shirt and gold teeth. (Tr. 448). Chinisha said she identified Petitioner as "D Money" from a Facebook photo and showed the photo to police. (Tr. 454, 466-67). Chinisha explained her initial statements to police about shots coming from the car as talking

too fast or being hurt by her mother's passing, and said the shots came from by the fence and were fired by Petitioner. (Tr. 456-57, 464-65). Chinisha recalled stating in deposition that if Petitioner didn't do the shooting, he knew who did. (Tr. 475-76).

Kia Floyd was sitting in her car in the parking lot outside of Rumors when she saw Petitioner walking away post-fight and heard him get on the phone and say "I'm fixing to go off," request a ride, and speak the words "Take me to get my shit." (Tr. 488-92). Floyd interpreted this as Petitioner saying he was fixing to "off" or kill people and wanted a ride to get his gun. (Tr. 492). Floyd called Chinisha Jackson and told her about this because Chinisha "went the same way that the boys who they was fighting with." (Tr. 493). Floyd ended up at the Chevron, but didn't see the shooting. (Tr. 494-95).

Johnetha Ragins was standing outside the Chevron facing the liquor store across the street with Andrea Dixon and Chris Gatlin when she heard gunshots. (Tr. 524-25). Ragins said she looked in the area of where the gunshots came from and saw "the gun that was wearing the white and blue shirt" and later told police the shooter was the same person who previously fought Chris Gatlin, her cousin. (Tr. 525-28). She was able to determine Petitioner's name because "once we got in the car and I asked my cousin, who is it, and he ended up telling me his name." (Tr. 528). She later somehow identified Petitioner from a photo lineup. (Tr. 531-32).

Ragins admitted she had been drinking, was nearsighted, normally wore glasses, and was not wearing corrective lenses that night. (Tr. 539-40).

At a break during trial, Petitioner told the trial court he had researched a company called Owen's Forensics for the purpose of enhancing the surveillance video to clarify the details of the shooter. (Tr. 700). Petitioner informed his initial attorney, Byron Hilemon, about the company and was informed it was too expensive and the State would never pay for it. (Tr. 700). Petitioner requested successor counsel, Joshua Westcott, seek video experts and was again informed the experts were too expensive. (Tr. 701-02). Westcott told the court he did investigate the issue and attempted his own enhancements with Adobe Media Creative Suite. (Tr. 702). Based on his own knowledge and experience, Westcott believed the video was not of good enough quality to enhance and felt he could not make a good faith argument for JAC funds to investigate the matter. (Tr. 702-04, 706-07). Westcott started leading into his tactical thoughts on video enhancement before the court cut him off. (Tr. 704).

The State told the trial court no enhancement had been done on the video. (Tr. 709). The State said a media person in their office tried unsuccessfully to zoom in on the shooter's face, but the result was pixelated. (Tr. 709-10). When pressed for details on their media person, the State described him as a specialist or expert in video and photograph technology. (Tr. 710-11).

Petitioner was found guilty as charged and sentenced to life in prison. Petitioner spoke at sentencing, maintained his innocence, and said he was not present when the shooting occurred. Petitioner appealed and the Second District Court per curiam affirmed. *Robinson v. State*, 284 So. 3d 467 (Fla. 2d DCA 2019).

On March 26, 2020, Petitioner filed a pro se Rule 3.850 motion for postconviction relief and alleged a single ground of ineffective assistance of counsel. (Mot. 1). Petitioner argued trial counsel was ineffective for failure to hire and present the testimony of a video expert, Owens' Forensics, who would have exonerated him through the surveillance video. (Mot. 5). Petitioner referenced the moment in trial the absence of a video expert was discussed, including trial counsel's opinion that the video could not be enhanced to show relevant details. (Mot. 6-10; Tr. 698-710). The motion alleged the failure to retain and present a video expert constituted deficient performance resulting in prejudice because an expert would have shown Appellant to be innocent. (Mot. 6-13).

The trial court summarily denied Petitioner's motion on April 23, 2020. (Order 1). The court found Petitioner's disagreement with trial counsel about the hiring of a video expert was insufficient to warrant an evidentiary hearing. (Order 6). The court further found trial counsel had both an opinion that the video could not be enhanced and a strategic basis as discussed on record for not hiring an expert. (Order 5).

Petitioner belatedly appealed to the Second District Court of Appeal. Postconviction appellate counsel, Andrea Norgard, argued the summary denial was improper because Petitioner's pro se motion was facially insufficient and he was entitled to an opportunity to amend. (Br. 5-6). The Second District per curiam affirmed without opinion. *Robinson v. State*, 317 So. 3d 1138 (Fla. 2d DCA 2021).

## II. STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). § 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

28 U.S.C. § 2254(b)(1)(A) provides that a state prisoner's application for a writ of habeas corpus shall not be granted unless the petitioner has first exhausted all the remedies available in state court. Exhaustion requires the prisoner "fairly present his claim in each appropriate state court, thereby alerting that court to the

federal nature of the claim," so the state is not deprived of the opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may still consider a non-exhausted claim if the petitioner shows "cause" and "prejudice" to overcome the state procedural bar. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held the procedural default may be excused where (1) the state courts did not appoint counsel in the initial review collateral proceeding for a claim of ineffective assistance of trial counsel, or (2) where appointed counsel in the initial review collateral proceeding was ineffective. *Id*. at 14.

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id*. at 17. A petitioner must further show his ineffective assistance of trial counsel claim is substantial, meaning "the claim has some merit." *Id*. at 14.

The Eleventh Circuit has held a petitioner may establish cause for defaulting on a claim of ineffective assistance of trial counsel under *Martinez* where four conditions are met:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the claim was defaulted because the petitioner had "no counsel" or "ineffective" counsel during the state collateral

> review proceeding; (3) the state collateral review proceeding was the
> "initial" review proceeding in respect to the "ineffective-assistance-of-
> trial-counsel claim"; and (4) state law requires that an ineffective
> assistance of trial counsel claim be raised in an initial-review collateral
> proceeding.

*McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1368 (11th Cir. 2021) (citing

*Trevino v. Thaler*, 569 U.S. 413, 423, 428 (2013)). An ineffective assistance of

counsel claim is "substantial" where "jurists of reason would find it debatable." *Id.*

(quotations omitted).

The burden is on the federal habeas petitioner to establish the need for an

evidentiary hearing. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th

Cir. 2011).  "In deciding whether to grant an evidentiary hearing, a federal court

must consider whether such a hearing could enable an applicant to prove the

petition's factual allegations, which, if true, would entitle the applicant to federal

habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### III. ARGUMENT

Trial counsel rendered ineffective assistance of counsel by failing to

investigate and present the testimony of a video expert to impeach the identification

witnesses and conclusively show they could not have identified Petitioner as the

shooter.

To prove ineffective assistance of counsel, a movant must show both deficient

performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Deficient performance is present where counsel's conduct falls below an objective standard of reasonableness. *Id*. Prejudice is demonstrated where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Under Florida law, trial counsel may be ineffective for failing to investigate and present the testimony of an expert to support the defense case. *See Ibar v. State*, 190 So. 3d 1012, 1019-23 (Fla. 2016) (reversing for new trial based on counsel's failure to present a facial identification expert or forensic anthropologist to challenge the State's theory that Ibar was one of the perpetrators captured on surveillance).

In this case, Petitioner retained the services of Robert D. Moody, president, CEO, and founder of Forensic Data Services. (Decl. 1). Moody reviewed the channels 10, 12, 13, and 16 of the Chevron surveillance videos in this case. (Decl. 1). Moody utilized Adobe Premiere and was unable to enhance the video from channels 13 or 16 to show the shooter's features. (Decl. 1-2).

Moody performed additional analysis regarding the witnesses. At 2:46:04 on channel 13, the shooter appears from behind a fence. (Decl. 2). The shooter is gone by 2:46:06. (Decl. 2).

Two women (Kyshariah and Chinisha Jackson) arrive in the center frame of channel 13 at 02:45:23 across the street from the Chevron. (Decl. 2). One woman is wearing light clothing and the other is wearing dark clothing. (Decl. 3). The women

begin to cross the street at 02:46:00 and are almost across the street when shots were fired at 02:46:05. (Decl. 2). At 02:46:05, the woman in light clothing "was startled and performed a 'duck and cover' move' clearly attempting to evade the shooter." (Decl. 3). At that same moment, the woman wearing dark clothing was startled and turned her back to the shooter. (Decl. 3). Continuing to the next second at 02:46:06, the shooter is gone while the woman in dark clothing runs away from the shooter. (Decl. 3). The woman in light clothing starts moving in the direction of the shooter's position. (Decl. 3).

After a careful review of the video, Moody found neither of the women could have seen the shooter because they were startled and "[w]hile one is ducking for cover, the other turns her back to the shooter." (Decl. 3). "By the time they regain their composure and run (approximately 1 second later) the shooter has already left and is no longer in the line of sight of the women or the camera." (Decl. 3).

Petitioner submits the facts of his case are such that expert video testimony would have led to a different outcome. The testimonies of Kyshariah and Chinisha Jackson looking toward the gunshots and seeing the shooter are not credible because the surveillance video clearly shows otherwise. Though both claimed to look towards the shooter, the video shows neither woman looked at the shooter. As noted in Moody's expert declaration, by the time Kyshariah and Chinisha had regained their composure enough to look around, the shooter was already gone. Further, by

the time the woman in the light clothing reached the fence line at 02:46:14 on the channel 13 surveillance, the shooter had already fled from sight and been gone since 02:46:10 on channel 16. Accordingly, neither Kyshariah nor Chinisha could have possibly identified Petitioner as the shooter.

Without Kyshariah and Chinisha Jackson's identification, the identification would have rested upon Johnetha Ragins' testimony. However, Ragins' identification testimony is also not credible. The shooter appeared from behind the fence for all of one second. As measured on Google Maps, Ragins was approximately 120 feet from the fence line when the shooter emerged for one second.[1] Further, Ragins admitted to drinking, being nearsighted, and being without her glasses on the night of the shooting when she allegedly saw the shooter for his single second appearance. Ragins' identification is further suspect because her cousin was the person who actually provided Petitioner's identification:

> Q. How were you able to determine the name of the person with the blue and white shirt?
>
> A. Because once we got in the car and I asked my cousin, who is it, and he ended up telling me his name. Well, he said, D-Money. He didn't say Derrick.

---

[1] Channel 10 of the surveillance video captures the scene to the right of the south-facing entrance to the Chevron. Ragins is seen in this feed; therefore, she must have been placed at the approximate same latitude as the storefront. The distance from the storefront latitude to the fence line where the shooter stood is measured at 121.6 feet per Google Maps.

(Tr. 528). Ragins also testified to facing the liquor store at the time of the shooting, which would mean the shooter would have appeared at a hard right angle and only for the brief instant. Viewing the totality of the circumstances, the identification of Petitioner as the shooter fails without the Jackson sisters.

Though unrelated to the failure to call a video expert, it is worth noting that Kia Floyd's testimony is insufficient to find the results of the proceeding would not have changed absent the identification testimony. Floyd initially testified to overhearing Petitioner say "I'm fixing to go off" and requesting someone "take me to go get my shit" while talking on the phone after getting the worse end of the fight. (Tr. 491). The State's question changed the phrase to "I'm fixing to off them." (Tr. 491). While her interpretation of the phrase was nonetheless consistent with "I'm going to kill them", Floyd's interpretation of a slang phrase cannot stand as competent evidence of Petitioner being the shooter. Indeed, the Urban Dictionary[2] defines the phrase "go off" as "feeling yourself", "to angrily complain about," or expressing an opinion while wrong.

Trial counsel's failure to seek the assistance of a video expert constitutes ineffective assistance of counsel. Though Westcott believed a video expert would not be able to enhance the shooter's features enough to exclude Petitioner, enhancing the shooter was not the only possible use for expert video services. Video experts

---

[2] https://www.urbandictionary.com/define.php?term=go%20off.

also give detailed attention to surveillance video, identify where the persons move and look, and slow the footage down enough to hone in on specific moments of consequence. Westcott's amateur expertise in Adobe video editing software renders his deficiency all the more onerous because Robert Moody was able to use Adobe software to identify the foregoing facts. Even with his general knowledge of video manipulation, Westcott failed to conceive of any use for the video evidence except enhancing the features of the shooter. Considering the totality of the circumstances, Westcott's failure to investigate and present the testimony of a video expert as impeachment evidence constitutes deficient performance falling below an objective standard of reasonableness.

Moreover, through the lens of due process, Westcott's justification that the Florida Justice Administrative Commission ("JAC") did not have a video expert under contract was unreasonable. It is well settled that the State must take steps to assure an indigent defendant "has a fair opportunity to present his defense." *Ake v. Okla.*, 470 U.S. 68, 76 (1985).

> This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Id*. The Due Process Clause of U.S. Const. amend. XIV requires the state, upon request, to provide indigent defendants with the "basic tools of an adequate defense

… when those tools are available for a price to other prisoners." *Britt v. N.C.*, 404 U.S. 226, 227 (1971). Florida uses JAC to facilitate the procuring of experts for indigent criminal defendants. *Fla. Stat.* § 27.425. To receive expert funding, an attorney must file a motion with the court which establishes the need for the expert services. In this case, if a video expert was not under contract, a video expert would have been found as long as the need was established.

Petitioner was prejudiced by trial counsel's ineffective assistance because the testimony of a video expert such as Robert Moody would likely have led to a different outcome in the case. Absent the identification testimony of the Jackson sisters, there is a reasonable probability the results of the proceeding would have been different because the remaining evidence linking Petitioner to the shooting was very slim. With the Jackson sisters thoroughly impeached through the video expert testimony, the State would be left with Ragins' highly dubious and corrupted identification testimony and circumstantial evidence placing Petitioner in the general area. Ragins testified in trial she was focused on the shooter's shirt color and never saw a face, yet she was inexplicably able to identify Petitioner's face in a photo lineup. Further, Ragins gave a statement to police at 6:35 a.m. on October 15, 2016, just over four hours after the shooting, where she said, to the best of her knowledge, the shooter was the guy with the white and blue shirt. She didn't know who he was. Ragins also described another person named CoJack who had gold teeth (similar to

Petitioner), wore a red and blue shirt, and also fought her cousin, Chris Gatlin. Ragins' trial testimony of hearing Petitioner's name from Chris Gatlin differed from this initial statement. In any case, Ragins' identification testimony was in every way flawed and unbelievable.

The instant claim was not exhausted in state court. In Florida, claims of ineffective assistance of counsel are generally not cognizable on direct appeal. *Gore v. State*, 784 So. 2d 418, 437 (Fla. 2001). In fact, the Florida Supreme Court recently held claims of ineffective assistance of counsel may only be raised in a motion for postconviction relief. *Steiger v. State*, 328 So. 3d 926, 928 (Fla. 2021). Petitioner did file a *pro se* motion for postconviction relief, but the motion argued a video expert would have shown the shooter's features would have been different from his own.

Nevertheless, Petitioner submits this Court should excuse the procedural default because the prongs set forth in *Martinez* and *McKiver* are satisfied. Petitioner's unexhausted claim is substantial because jurists of reason would find a claim of ineffective assistance of counsel based on counsel's failure to impeach key identification witnesses debatable. In *Nixon v. Newsome*, 888 F.2d 112 (11th Cir. 1989), Nixon argued trial counsel rendered ineffective assistance by failing to impeach the only eyewitness's testimony of Nixon being the shooter with a transcript of a co-defendant's trial where the same eyewitness said the co-defendant was the shooter. *Id.* at 114. After the state court denied relief, Nixon sought federal habeas

relief, which the district court denied without a hearing. *Id*. The Eleventh Circuit found trial counsel's omission constituted deficient performance, found prejudice was present because the remaining evidence was not overwhelming, and reversed. *Id*. at 116-17. Here, as in *Nixon*, the eyewitness testimony of the Jackson sisters was the most significant piece of evidence against Petitioner; therefore, the claim of Westcott's failure to impeach them with available evidence is certainly substantial.

Regarding the remaining prongs of *McKiver* and *Marintez*, Petitioner had no counsel during the initial state collateral review proceeding. The state collateral review proceeding where Petitioner's *pro se* motion was filed was the initial review proceeding regarding ineffective assistance of counsel because the claim at issue is not cognizable on direct appeal. Finally, the initial review collateral proceeding was where the claim had to be raised per Rule 3.850, *Fla. R. Crim. P*. Accordingly, Petitioner respectfully asks this Court for *de novo* review pursuant to *Martinez*.

## IV. CONCLUSION

In sum, trial counsel Westcott rendered ineffective assistance of counsel by failing to investigate and present the testimony of a video expert as impeachment evidence for the identification witnesses. Petitioner has met his initial evidentiary burden by attaching the declaration of Robert Moody, a video expert, in support and citing to specific portions of the record. Petitioner requests this Court grant an

evidentiary hearing where Petitioner will be able to prove the factual allegations which entitle him to federal habeas relief.

## Declaration of Robert D. Moody

I, Robert D. Moody, declare that I have read the foregoing instrument and the facts and information stated in it are true and correct to the best of my knowledge. I am personally acquainted with the facts herein stated.

1. I am the President, CEO, and Founder of Forensic Data Services, Inc. (d/b/a FDS Global) (hereafter referred to as FDS) which is based in Broward County, Florida.

2. My company was retained by Defendant, by and through his attorney, the Law Office of Robert Malove.

3. My company's fees for this engagement are being paid by the client, by and through his attorney Robert Malove. My rate is $350 per hour.

4. My duties with FDS include being the principal investigator and testifying expert.

5. I am certified in the areas of Information Systems Auditing, Information Security, and Computer Forensics. Additionally, I have received training relating to my work in this matter and provided my CV to fully describe my education, Certification, Training, and Testifying background. My CV is attached as **Exhibit 1**.

6. In the present matter, FDS has been asked to enhance the security footage from two of the camera feeds and to review and evaluate the related content from another two camera feeds.

7. The camera feeds are identified by channels. The channels subject to my work, review, and analysis are:

   a. Channel 10 – Gas Station Parking Lot
   b. Channel 12 – Side of the building (looking towards gas pumps)
   c. Channel 13 – Side of the building (facing shooter location)
   d. Channel 16 – Parking lot

8. To accomplish my tasks, FDS used the software program Adobe Premiere.

9. The work performed with Adobe Premiere included the following:

   a. Videos provided to Counsel were sent to FDS. These videos were downloaded and then accessed through Adobe.

   b. The videos were watched and based upon the description of Counsel; the precise footage was identified.

   c. Enhancement to the shooter as presented in the Channel 13 video footage was attempted.

d. Enhancements to the person running, as presented in the Channel 16 video footage were attempted.

10. Unfortunately, in this case, enhancements do not equal clarity.

    a. The person in the Channel 13 video cannot be positively identified. The person's clothing is of a light color, but actual color cannot be determined. Neither the person's face, teeth, or even eye color cannot be seen or identified.

    b. The only identifiable characteristic of this person is that they appear to be wearing a short-sleeve shirt, long pants, and white shoes.

    c. The person in the Channel 16 video cannot be positively identified either. The person running is also wearing light clothing. Nothing else can be determined regarding this individual.

11. Additional analysis involved:

    a. Identifying when the shooter, in the Channel 13 video, arrived on the scene and how long this person remains before retreating off camera.

        i. The shooter appears on-camera at the time stamp of 02:46:04.

        ii. The shooter retreats off-camera at the time stamp of 02:46:06.

    b. Identifying the movements of the two women (witnesses) crossing the street at the time of the shooting.

        i. There are two women are walking towards the camera, (right to left), (one is a witness, and the other is unidentified). They first appear in the distance, in the middle of the street at the time stamp 02:44:49.

        ii. The two women arrive (center frame) and across the street from the camera where they stop and begin a conversation with another woman (second witness) at the time stamp 02:45:23.

        iii. After a brief conversation, the unidentified woman continues alone, and the two women (witnesses) begin to cross the street at the time stamp 02:46:00.

        iv. The two women are crossing the street and they are approximately ¾ of the way across the street when shots were fired at 02:46:05.

    v. When shots were fired at the time stamp of 02:46:05, the woman (witness) in white was startled and performed a "duck and cover move" clearly attempting to evade the shooter.

    vi. When shots were fired at the time stamp of 02:46:05, the woman (witness) in dark was startled and turned her back on the shooter.

    vii. At the time stamp 02:46:06, the following observations are made:

      1. Shooter has retreated from the area.

      2. Woman in dark clothing starts running away from the shooter.

      3. Woman in white clothing starts running up the street towards the shooter's position.

      4. Other people in the video start moving, running, and driving off.

To conclude, it is my opinion and with a reasonable degree of scientific certainty that the videos reviewed show a shooting involving an unidentifiable man in light clothing at approximately 02:46:05 AM on October 15, 2016.

The shooter appears on the scene and is captured by the camera for approximately two (2) seconds which time he arrived, positioned himself, aimed his pistol, fired several shots, and retreats.

While this is going on, the two women (witnesses) are crossing the road talking. At the time of the shooting, they are startled. While one is ducking for cover, the other turns her back to the shooter.

By the time they regain their composure and run (approximately 1 second later), the shooter has already left and is no longer in the line of sight of the women or the camera.

Lastly, the woman in dark clothing can't have seen the shooter as a response to the shooting involved turning her back and then running in the direct opposite direction as the travel path of the shooter.

DECLARATION Page 3 of 4

DECLARANT FURTHER SAYETH NOT.

Under penalty of perjury, I hereby affirm that the foregoing statements are true and correct.

Robert D. Moody

Date: March 16, 2022